UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLACK SOIL ASSET MANAGEMENT LIMITED, et al., <br><br> Plaintiffs, <br><br> v. <br><br> QIAN WANG, <br><br> Defendant. | Case No.  23-cv-04493-AGT <br><br> **ORDER ON PETITION TO CONFIRM, AND MOTION TO VACATE, FOREIGN ARBITRAL AWARD** <br><br> Re: Dkt. Nos. 4, 24 |

Black Soil Asset Management Ltd. and its owner, Qiang Chang Sun, have petitioned the Court to confirm a $44.3 million foreign arbitral award entered in their favor against SICCO Investment, Inc., and Qian Wang. Wang, a U.S. citizen with a residence in the Northern District of California, opposes the petition and has moved to vacate the award.

The Court must confirm the award unless it "finds one of the grounds for refusal or deferral of recognition" specified in the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention" or "Convention"), June 10, 1958, 21 U.S.T. 2517. 9 U.S.C. § 207. Wang invokes two such grounds but the Court finds neither applicable, as explained below. The petition will be granted and the award confirmed.

## I.  BACKGROUND

In 2018, Black Soil and SICCO executed three loan agreements whereby Black Soil agreed to lend SICCO $48 million in total. SICCO intended to use the loans to finance a real estate project in Shanghai. Two large shareholders of SICCO, Qian Wang and Minkai Shen, agreed to guarantee repayment of the loans if SICCO defaulted.

For several years, SICCO made loan repayments. But then SICCO encountered financial difficulties and stopped repaying the principal and interest that was due. When SICCO defaulted, Black Soil attempted to contact SICCO's guarantors, Wang and Shen. Wang responded but Shen did not. Shen, it turns out, had been imprisoned in Shanghai on charges unrelated to the parties' loans.

Black Soil and Wang were unable to informally resolve SICCO's loan default. Black Soil and its owner, Qiang Chang Sun (collectively, "Black Soil"), thus initiated arbitration in the Hong Kong International Arbitration Centre ("HKIAC"). Black Soil named SICCO and Wang, but not Shen, as respondents.

Before the arbitration hearing, Wang submitted two witness statements. He sought to use the statements to support, among other things, his contentions that he should be held liable for only 50 percent of SICCO's loan obligations and that Black Soil, before initiating arbitration, should have done more to contact Shen, the other SICCO guarantor.

Black Soil intended to cross-examine Wang on his witness statements. But during the arbitration hearing, Wang told the three-judge panel that he was unwilling to be cross-examined. He was concerned that his testimony could be used to incriminate him in an ongoing criminal investigation in mainland China.

The arbitration panel warned Wang that if he refused to be cross-examined, the panel wouldn't consider his witness statements. *See* Dkt. 9-1 at 50, App. 1 ¶ 3 ("The two go hand-in-hand, Mr. Wang. You can only submit witness statements if you are prepared . . . to be cross-examined on them.") (emphasis omitted). Wang nevertheless stood firm: "I'm not going to tender myself to be cross-examined." *Id.* ¶ 5 (emphasis omitted).

After Wang refused to be cross-examined, Black Soil moved to strike his witness

2

statements. The arbitration panel granted the motion. *See id.* ¶ 9. The panel explained that it "would be giving no weight to Mr. Wang's witness statements for the purposes of these arbitration proceedings." *Id.* ¶ 9 (emphasis omitted).

On the merits of the dispute, the panel concluded that SICCO and Wang had breached the parties' loan agreements. SICCO had failed to repay the loans and Wang hadn't honored his guarantee. The panel held that Wang was liable for 100 percent of SICCO's unpaid debt but explained that Wang could "seek a contribution against [Shen]." Dkt. 9-1 at 37 ¶ 115(d).

The panel awarded Black Soil outstanding principal and interest, legal costs and expenses, the costs of arbitration, and post-judgment interest. *See* Dkt. 9-2 at 2. As of June 30, 2023, the total amount of the award was $44.3 million. *See* Dkt. 9, Teng Decl. ¶ 7.

After the panel entered its award, Black Soil petitioned the Court to confirm it. Wang, a resident of Orinda, California, has opposed the petition and seeks to vacate the award. Wang says the Court shouldn't confirm the award because (i) the arbitration procedure didn't comply with the parties' agreement and (ii) he couldn't fully present his case.

## II. LEGAL STANDARD

Black Soil's motion to confirm the HKIAC's arbitral award is governed by the New York Convention, 21 U.S.T. 2517. *See* 9 U.S.C. §§ 201–208 (implementing the Convention). Under the Convention, the Court must confirm the award unless "one of the grounds for refusal or deferral of recognition" is present. 9 U.S.C. § 207.

The Convention enumerates seven grounds or defenses to the recognition of a foreign arbitral award. These grounds include, among others, that:

> (b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or . . .

> (d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties . . . .

21 U.S.T. 2517, Art. V § 1(b), (d).

As the party opposing confirmation, Wang bears the burden of proving that one of these defenses applies. *See Polimaster Ltd. v. RAE Sys., Inc.*, 623 F.3d 832, 836 (9th Cir. 2010). His burden "is substantial because the public policy in favor of international arbitration is strong, and the New York Convention defenses are interpreted narrowly." *Id.* (citation omitted).

### III. DISCUSSION

The Court will first consider Wang's contention that the arbitration procedure didn't comply with the parties' agreement. *See* 21 U.S.T. 2517, Art. V § 1(d). The Court will then consider Wang's assertion that he wasn't able to fully present his case. *See id.*, Art. V § 1(b).

**A.     Article V § 1(d) Defense**

In their arbitration agreement, which was part of all three loan agreements, the parties agreed that if a dispute arose, they would attempt to amicably resolve the dispute before proceeding to arbitration. Wang says Black Soil failed to satisfy this pre-arbitration consultation requirement, resulting in an "arbitral procedure [that] was not in accordance with the agreement of the parties." 21 U.S.T. 2517, Art. V § 1(d).

More specifically, Wang contends that because Shen, SICCO's second guarantor, didn't participate in the pre-arbitration consultation, the consultation was incomplete. Shen was in prison, and although Black Soil attempted to include him in the consultation—sending a consultation request to the address Shen had listed in the loan agreements (the agreed upon method of service) and trying to contact Shen at various Shanghai prisons—those efforts were unsuccessful. *See* Dkt. 9-1 ¶¶ 22, 46–48, 69, 115(a).

"To determine whether the procedure used was contrary to the parties' agreed arbitral procedures, [the Court] must begin with the language of the parties' arbitration agreement." *Polimaster*, 623 F.3d at 836. In relevant part, the arbitration agreement reads as follows:

> Any dispute, difference or claim arising out of, in connection with or relating to this Contract (each a "Dispute") shall be first consulted and resolved through amicable discussion among the Parties. If such Dispute fails to be resolved through amicable discussion within thirty (30) days within the service of written request of consultation, it shall be submitted to the Hong Kong International Arbitration Centre ("HKIAC") and finally resolved by arbitration . . . .

*E.g.*, Dkt. 8, Sun Decl., Ex. A § 12.2.

The agreement's first sentence—"Any dispute . . . shall be first consulted and resolved through amicable discussion among the Parties"—provides the basis for Wang's argument. Wang asserts that the word "shall" indicates that the parties viewed consultation as mandatory, while the phrase "among the Parties" shows an intent for all parties to participate. Shen was among the defined "Parties" in the loan agreements, *see id.*, Preamble, so Wang argues that any pre-arbitration consultation needed to include Shen.

Wang's argument breaks down when the agreement's second sentence is considered. The second sentence, reprinted here, reads as follows: "If such Dispute fails to be resolved through amicable discussion within thirty (30) days within the service of written request of consultation, it shall be submitted to the [HKIAC] and finally resolved by arbitration." In the second sentence, it becomes evident that the trigger for arbitration isn't a consultation among the parties, but rather "service of [a] written request of consultation." If a party serves such a request and 30 days pass and the dispute remains unresolved, the dispute "shall be submitted to the [HKIAC] and finally resolved by arbitration."

If the parties had intended for the consultation, rather than service of a written request

5

for consultation, to trigger arbitration, they could have accomplished that. They could have written the arbitration agreement's second sentence like this: "If such Dispute fails to be resolved . . . within thirty (30) days [of *the consultation*], it shall be submitted to the [HKIAC] and finally resolved by arbitration." The parties didn't take that approach. Instead, they conditioned arbitration on "service of [a] written request of consultation" and the passing of 30 days without resolution of the dispute. This suggests that, despite how the agreement's first sentence can be read in isolation, the parties didn't intend for consultation to be an absolute prerequisite to arbitration.

Nor is this surprising. If Wang were correct that, in every circumstance, all parties would need to participate in a consultation before arbitration, any party could avoid arbitration by refusing to participate in the consultation. This loophole would undermine the enforcement of the loan agreements and lead to inequitable results.

Of course, the arbitration agreement's first sentence isn't without meaning. Read in context, the first sentence establishes that if there is a dispute under the loan agreements, the initiating party cannot submit the dispute to arbitration without first requesting that all parties consult to resolve the dispute. If, however, a party doesn't respond or refuses to participate in the consultation, the first sentence doesn't bar the initiating party from commencing arbitration. Rather, as the arbitration agreement's second sentence establishes, once the initiating party serves a written request of consultation and 30 days pass without resolution of the dispute, the dispute "shall be submitted" to the HKIAC. *Id.* § 12.2. This reading gives effect to both sentences. Wang's interpretation—that under no circumstances can a party initiate arbitration without first consulting with all other parties—does not.

Wang responds that the Court shouldn't prioritize practical concerns over the terms

6

of the parties' agreement. As a theoretical matter, he is correct. If the parties had agreed that none of them could initiate arbitration until all of them had discussed the dispute, the Court couldn't override that agreement, even if the agreement was impractical. *See Polimaster*, 623 F.3d at 840 ("[W]e cannot override the express terms of the parties' agreement, because parties are free to agree to inefficient arbitration procedures."). But the parties didn't reach such an agreement. They instead agreed that any of them could arbitrate a dispute "[i]f such Dispute fail[ed] to be resolved through amicable discussion within thirty (30) days within the service of [a] written request of consultation." Sun Decl., Ex. A § 12.2.

Alternatively, Wang asserts that Shen was an indispensable party and as such, needed to participate in the pre-arbitration consultation. Wang hasn't backed up this indispensable-party argument with citation to any relevant Hong Kong law. Nor, as a comparison, would Shen have been an indispensable party under Federal Rule of Civil Procedure 19. *See, e.g.*, *In re Olympic Mills Corp.*, 477 F.3d 1, 10 (1st Cir. 2007) ("[C]o-obligors generally are not indispensable parties in contract disputes that do not involve reformation, cancellation, rescission, or otherwise challenge the validity of the contract."); *Trans Pac. Corp. v. South Seas Enters., Ltd.*, 291 F.2d 435, 436 (9th Cir. 1961) ("Nor, ipso facto, are joint obligors indispensable parties."). The Court thus rejects this argument too.

Black Soil didn't bypass the pre-arbitration consultation requirement. After SICCO defaulted on its loan obligations, Black Soil sent a demand letter to SICCO, Wang, and Shen, in which Black Soil made "a written request of consultation . . . within the meaning of Clause 12.2." Dkt. 9-1 ¶ 46 (emphasis omitted). Black Soil sent this letter to the addresses SICCO, Wang, and Shen had listed in the loan agreements, which was the agreed-upon method of service. *See id.* ¶¶ 47–48, 69. Shen didn't respond, so Black Soil consulted only with Wang,

7

who represented himself and SICCO. Then, when the dispute "fail[ed] to be resolved through amicable discussion within thirty (30) days within the service of written request of consultation," Black Soil "submitted [the dispute] to the [HKIAC]." Sun Decl., Ex. A § 12.2.

Because Black Soil satisfied the consultation requirement, the Court concludes that Wang hasn't demonstrated that "the arbitral procedure was not in accordance with the agreement of the parties." 21 U.S.T. 2517, Art. V § 1(d).

### B.    Article V § 1(b) Defense

Wang next invokes Article V § 1(b). Under that section of the New York Convention, the Court may decline to confirm a foreign arbitral award if "[t]he party against whom the award is invoked was . . . unable to present his case." 21 U.S.T. 2517. Wang says he was unable to present his case because the arbitration panel refused to consider his witness statements, leaving him without the means to present material evidence on, among other topics, the nature and extent of his and Shen's obligations as co-guarantors.

Section 1(b) "does not authorize a court to refuse to recognize . . . an award unless [the court] finds a denial of fundamental fairness in the arbitration proceedings." *Bartlit Beck LLP v. Okada*, 25 F.4th 519, 523 (7th Cir. 2022). Here, there was no denial of fundamental fairness when the arbitrators decided not to give any weight to Wang's witness statements.

If Wang had been on trial in the United States, the court would have similarly given no weight to his witness statements. The witness statements were equivalent to direct testimony; and if Wang wanted the fact finder to consider those statements, he needed to make himself available for cross-examination. *See Acosta v. Evans*, 430 F. App'x 598, 600 (9th Cir. 2011) ("Once a defendant chooses to take the stand, he 'opens himself to cross-examination . . . .'" (quoting *United States v. Panza*, 612 F.2d 432, 438 (9th Cir. 1979))).

Wang feared that cross-examination could be used against him in an ongoing criminal investigation. Even so, the privilege against self-incrimination doesn't allow a witness to avoid cross-examination on matters the witness puts in dispute.

> [A] witness has the choice, after weighing the advantage of the privilege against self-incrimination against the advantage of putting forward his version of the facts and his reliability as a witness, not to testify at all. He cannot reasonably claim that the Fifth Amendment gives him not only this choice but, if he elects to testify, an immunity from cross-examination on the matters he has himself put in dispute. It would make of the Fifth Amendment not only a humane safeguard against judicially coerced self-disclosure but a positive invitation to mutilate the truth a party offers to tell.

*Panza*, 612 F.2d at 437 (quoting *Brown v. United States*, 356 U.S. 148, 155–56 (1958)).

Wang invoked the privilege against self-incrimination. Having done so, he could not offer witness statements while avoiding cross-examination on those statements.

The arbitration panel reached the same conclusion. Under the panel's Procedural Order No. 1, which incorporated HKIAC Rules and the International Bar Association's Rules on Taking Evidence in International Arbitration, the panel had the discretion to disregard Wang's written statements if Wang didn't make himself available to be cross-examined. *See* Dkt. 9-1 at 53–54 ¶ 17, Procedural Order No. 1 § 6.4 ("If a witness whose attendance is required for cross-examination does not appear at the Hearing, the Tribunal may disregard the witness statement or expert report, unless the Tribunal determines otherwise."); *id.* at 54 ¶ 18, IBA Art. 4.7 ("Jf a witness whose appearance has been requested . . . fails without a valid reason to appear for testimony at an Evidentiary Hearing, the Arbitral Tribunal shall disregard any Witness Statement related to that Evidentiary Hearing by that witness unless, in exceptional circumstances, the Arbitral Tribunal decides otherwise.").

The panel reasonably exercised its discretion. The panel explained that a witness's evidence "must be properly tested [on] cross-examination." Dkt. 9-1 at 56–57 ¶ 25. The

panel also warned Wang that if he refused to be cross-examined, the panel wouldn't consider his witness statements. *See id.* at 50 ¶ 3. Wang said he "appreciate[d] that [the panel] . . . want[ed] to make sure [he] underst[ood] the consequences." *Id.* at 51 ¶ 5 (emphasis omitted). But he stuck to his position: "I'm not going to tender myself to be cross-examined." *Id.*

The arbitration panel's response to Wang's decision—no cross-examination, no witness statements—was eminently reasonable. The Court finds no "denial of fundamental fairness in the arbitration proceedings." *Bartlit Beck*, 25 F.4th at 523.

## IV. CONCLUSION

The Court grants Black Soil and Qiang Chang Sun's petition to confirm the foreign arbitral award entered in their favor. The HKIAC's final award, issued on June 30, 2023, *In the Matter of an Arbitration Under the 2018 HKIAC Administered Arbitration Rules between Black Soil Asset Management Limited, 1st Claimant, Qiang Chang Sun, 2nd Claimant, and SICCO Investment, Inc., 1st Respondent, Qian Wang, 2nd Respondent*, is confirmed in its entirety. Wang's motion to vacate the award is denied.[1]

**IT IS SO ORDERED.**

Dated: March 21, 2024

Alex G. Tse
United States Magistrate Judge

---

[1] Because none of the defenses to confirmation apply, the Court need not consider another argument made by Black Soil in opposition to Wang's motion to vacate—that only "a competent authority of the country in which, or under the law of which, that award was made" may vacate the award. Reply, Dkt. 29 at 7 (quoting 21 U.S.T. 2517, Art. V § 1(e)).